In the Matter of RICHARD N. SPARER, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 22, 1987

**APPEARANCES OF COUNSEL**

*Alan S. Phillips* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Siller & Galian* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Richard N. Sparer was admitted to the Bar by this court on December 16, 1963.

In 1974, he was suspended from practice for one year after failing to appear on a calendar call, which resulted in dismissal of his client's case, which conduct was compounded when, in response to his client's complaint to petitioner Committee, he admitted that he forged the client's signature to a receipt reflecting that he had returned the case file to the client. *(Matter of Sparer,* 44 AD2d 117.) By order of this court entered July 17, 1975, respondent was reinstated to the practice of law and, in September 1976, resumed practicing law on Long Island.

On March 3, 1983, respondent was convicted, after trial in the United States District Court for the Southern District of New York, of conspiracy to defraud the United States of America and mail fraud in violation of 18 USC §§ 371 and 1341. The convictions arose from the first ABSCAM investigation and involved a conspiracy, initiated in or about June 1976, to acquire Brookhaven Mortgage Servicing Corporation, a company primarily involved in servicing residential mortgages insured by the Veterans Housing Administration and the Federal Housing Authority. The object of the scheme, which continued until January 1, 1980 but never came to fruition, was to loot Brookhaven's assets, to use Brookhaven as a front for illegally laundering stolen securities, worthless securities and the cash fruits of crimes and criminal enterprises; to use Brookhaven as a front for the issuance and sale of worthless securities; to use Brookhaven as a front to illegally transfer large sums of money into and out of the United States; to secretly burn down properties mortgaged to Brookhaven and then defraud insurance companies by submitting false and fraudulent claims; and, to defraud certain government agencies by submitting inflated claims for services performed by Brookhaven in servicing mortgaged properties, including "boarding up", surveying and closing fees.

Respondent's original sentences, 3 months' incarceration and 4 years and 9 months' probation on the first charge, and 5 years' probation on the second, were subsequently modified on January 11, 1984, to reduce the term of incarceration to 4 months of weekends.

On April 27, 1983, petitioner filed a "serious crime" petition against respondent pursuant to Judiciary Law § 90 (4), and by order entered November 10, 1983, this court found that the crimes of which respondent was convicted were serious crimes as defined by 22 NYCRR 603.12 (b) and Judiciary Law § 90 (4)

(d), referred the matter to petitioner to hear and report as to the sanctions to be imposed, and suspended respondent from practice as an attorney and counselor-at-law pending final determination of the petition.

In accordance with this court's order, a hearing was held before a Panel of petitioner Committee on February 27, 1984 and May 21, 1984, at which four witnesses, including respondent, his psychiatrist, his former secretary and a lawyer who knew respondent for almost 30 years, testified on respondent's behalf. Following the hearing, posthearing memoranda were submitted by both parties.

On May 18, 1987, respondent moved to be reinstated to the practice of law on the ground that the Hearing Panel had not yet rendered its report, and that respondent's 3½-year interim suspension and his criminal conviction and sentence, coupled with the resulting physical and mental distress and the loss of his wife through divorce constituted sufficient punishment for his transgressions.

In response to respondent's motion, the Hearing Panel issued its report dated May 29, 1987, and petitioner cross-moved to deny respondent's motion for reinstatement and to confirm the Hearing Panel's report and recommendation that respondent be disbarred.

In its report, the Hearing Panel found it exceedingly hard to accept that respondent believed that he was joining a legitimate business venture and that, regardless of his initial belief, it is telling that when the principals began discussing the intention to utilize Brookhaven for criminal purposes, respondent did not withdraw but joined wholeheartedly in the discussions and participated in a discussion about concealing one of the principal's interest in Brookhaven because of his criminal record. The Panel further found that the use of Brookhaven to launder money was also discussed with respondent, as was the use of Brookhaven's funds to make extortionate loans; that his denial of criminal intent in the acquisition of Brookhaven was belied by his statements to the Grand Jury that dummy corporations could be used to control Brookhaven's profits and cash flow; and, that it is highly implausible that respondent could fail to perceive the criminal intent of the other principals when their discussions turned to arson and fraudulent insurance claims.

In recommending respondent's disbarment, the Panel found that respondent is plainly guilty of professional misconduct since he stands convicted of Federal felonies containing the

elements of conspiracy and fraud, both willful acts involving moral turpitude. It further found that despite respondent's attempt to minimize his conviction by suggesting that he lacked criminal intent, and by protesting that the criminal acts discussed were too preposterous to be real, he nevertheless admitted that he had made false statements to induce purported Arab investors (actually F.B.I. agents) to advance substantial amounts of money to purchase Brookhaven and acknowledged that he had participated in ongoing discussions of proposed criminal activity without protest. The Panel concluded that even if respondent's testimony were to be credited, which it found was not deserved and which it declined to do, respondent's participation in the criminal scheme was totally at variance with behavior required and expected of an attorney and demonstrates that respondent is unfit to remain a member of the Bar.

A review of the record before the Hearing Panel supports its findings and recommendation. Respondent's characterization of his crimes as relatively trivial is unconvincing since there is no doubt that the crimes for which he was convicted were "serious crimes" involving moral turpitude.

Unlike the respondents in the cases relied upon by him (Matter of Leifer, 80 AD2d 272; Matter of O'Hearn, 89 AD2d 184; Matter of Greenberg, 58 AD2d 965), where attorneys convicted of "serious crimes" were suspended from practice rather than disbarred, respondent's prior professional record is not unblemished. His previous suspension is clearly a factor to be considered in determining the proper sanction to be imposed (see, Matter of Dicker, 102 AD2d 163, 166). Indeed, respondent's participation in the criminal enterprise for which he was convicted commenced shortly before or contemporaneously with his reinstatement to practice after his earlier suspension. Clearly, respondent lacks the character and fitness required of a member of the Bar.

Accordingly, respondent's motion is denied, and petitioner's cross motion is granted. Respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law.

Murphy, P. J., Kupferman, Ross, Milonas and Kassal, JJ., concur.

Motion for reinstatement denied, the cross motion granted, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York effective immediately.